IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-0113-CMA -GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    DEBRA CAMPBELL,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Pegeen D. Rhyne, Assistant United States Attorney for the District of Colorado, and the defendant, Debra Campbell, personally and by counsel, AFPD Mary Butterton, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.    AGREEMENT

**A.    Defendant's Plea of Guilty:**

The defendant agrees:

(1)    to waive indictment and plead guilty to a two-count Information charging wire fraud, in violation of 18 U.S.C. § 1343, and subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1);

(2)    to waive certain appellate and collateral attack rights, as explained in detail below.

Page 1 of 16



(3)     be liable for restitution to various HOA as further identified in the Presentence Report in the amount of $252,069 and to the IRS in the amount of $158,820; and

(4)     not to contest forfeiture as more fully described below.

**B.     Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado concerning her theft of money from HOAs between March 2015 and April 2018 or the false tax returns that she filed for the tax years 2014-2017.  Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, file a superseding indictment with additional charges.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

**C.     Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

Page 2 of 16

(1)     the sentence exceeds the maximum sentence provided in the statutes of conviction, 18 U.S.C. § 1343 and 26 U.S.C. § 7206(1);

(2)     the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 21; or

(3)     the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how her sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)     the defendant was deprived of the effective assistance of counsel; or

(3)     the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D.    Restitution for Taxes Owed:**

The defendant agrees to pay restitution to the Internal Revenue Service ("IRS") in the amount of $158,820 for the taxes due and owing for tax years 2014-2017. The defendant agrees that she will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of the tax and interest that she agrees to pay as restitution. The defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

The government agrees that the defendant's restitution amount should be reduced by the amount of any payments already made by the defendant, exclusive of any payments on penalties and interest, on her outstanding tax obligations from conduct relevant to this plea before the time of sentencing.

The defendant agrees that nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time period covered by this agreement or any other time period, and she agrees that this agreement, or any judgment, order, release,

Page 4 of 16

or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period covered by this agreement or any other time period. The defendant also agrees to file complete and accurate tax returns for any outstanding tax years.

**E.     Forfeiture of assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere.  The assets to be forfeited specifically include, but are not limited to: a money judgment in the amount of $252,069.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.   The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters.  Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames.  The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The government agrees that payments made toward restitution will be credited toward the forfeiture money judgment.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offenses, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met.  The defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II.    ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of wire fraud and subscribing to a false tax return are as follows:

### Count One:  18 U.S.C. § 1343 (Wire Fraud)

A.    The defendant devised or intended to devise a scheme to defraud;

B.    The defendant acted with specific intent to defraud;

C.    The defendant used, or caused another person to use, interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

D.    The scheme employed false or fraudulent pretenses, representations, or promises that were material.[1]

## Count Two:  26 U.S.C. § 7206(1) (Subscribing to a False Tax Return)

A.    The defendant signed an income tax return that contained a written declaration that it was made under the penalties of perjury;

B.    The return contained a false statement;

C.    The defendant knew that statement was false;

D.    The defendant acted willfully, that is, with the voluntary intent to violate a known legal duty;

E.    The statement was material; and

F.    The defendant filed or caused someone to file the income tax return with the Internal Revenue Service.[2]

## III.    STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of 18 U.S.C. § 1343 (wire fraud) as charged in Count One of the Information is: not more than 20 years' imprisonment; maximum term of supervised release of 3 years; maximum fine of $250,000 or twice the gross gain or loss resulting from the offense, or both; $100 mandatory victim's fund assessment fee; and restitution in the amount of $252,069.

The maximum sentence for a violation of 26 U.S.C. § 7206(1) (subscribing to a false tax return) as charged in Count Two of the Information is: not more than 3 years' imprisonment; maximum term of supervised release of 1 year; maximum fine of

---

[1] Tenth Circuit Criminal Pattern Jury Instructions, 2021 Edition, § 2.57.
[2] Tenth Circuit Criminal Pattern Jury Instructions, 2021 Edition, § 2.93.

$250,000 or the twice the gross gain or loss resulting from the offense, or both; $100
mandatory victim's fund assessment fee; costs of prosecution, and restitution in the
amount of $158,820.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the
rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part
of its sentencing methodology, compute the advisory guideline range for the offense of
conviction, consider relevant conduct, and consider the other factors set forth in 18
U.S.C. § 3553, additional facts may be included below which are pertinent to those
considerations and computations. To the extent the parties disagree about the facts set
forth below, the stipulation of facts identifies which facts are known to be in dispute at
the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-
contradictory additional facts which are relevant to the Court's guideline computation, to
other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct.

### Wire Fraud

From 2009 through April 2018, defendant Campbell owned and operated a
company called A Better Alternative Management (ABAM) in Grand Junction, Colorado.
ABAM was hired by Homeowners Associations (HOAs) to manage their finances for a
monthly fee of between $150 and $750, depending on the level of service that the

HOAs requested. Between early 2015 and April 2018, ABAM managed approximately 59 to 70 HOAs. As a result of these management relationships, Campbell had access to, and signatory authority for, the HOAs' bank accounts. Campbell collected and deposited payments from HOA members and paid administrative expenses on behalf of the HOAs. Through these management relationships, Campbell became aware of which HOA boards did not monitor their HOA's bank account and finances.

In approximately 2015, Campbell obtained Payday loans for personal expenses and had trouble making the repayments. In order keep up with her loan payments, starting in March 2015, Campbell began making unauthorized transfers to ABAM's bank accounts from some of the HOAs' bank accounts and used that money for her personal expenses, including repaying her loan. Campbell selected HOAs whose boards did not monitor their HOA's bank account or finances. Initially, Campbell told herself that she intended to repay the money. But when Campbell realized that no one noticed the money missing from the HOA accounts, she did not repay the money and continued to steal more and more money.

In order conceal and perpetuate her theft, Campbell regularly altered the HOAs' bank statements so they did not reflect the unauthorized transfers and falsely reflected a higher balance than actually existed in the account. Campbell provided these altered and false bank statements to the HOAs to support the false account reconciliations that she created and provided to the HOAs as part of her services. Campbell provided these false records to the HOAs with the intent to deceive them regarding the number of payments that had been made from their accounts and what their account balances were. In this manner, between March 2015 and April 2018, Campbell stole $252,069

from her client HOAs.

Prior to April 2018, the Division of Real Estate of the Department of Regulatory Agencies in Colorado began investigating Campbell's misappropriation of client funds. On April 17, 2018, Campbell signed Stipulation Order (2017-2103) in which she admitted to violations of community association manager licensing laws/rules, including converting/diverting the funds of others. As a result of this Stipulation Order, Campbell's community association manager license was permanently revoked effective May 1, 2018, and Campbell began closing down ABAM.

Despite having already signed the Stipulation Order, when Campbell was confronted by an HOA board member on April 20, 2018, Campbell lied and made another unauthorized transfer to cover up her embezzlement. Specifically, on April 20, 2018, R.B., an HOA board member, went to Alpine Bank with the HOA's treasurer to obtain access to the HOA's bank account. A bank employee advised R.B. that the HOA's bank account had been closed in 2017. R.B. was alarmed because he had expected the bank account to have a balance of approximately $55,000. R.B. and the treasurer went to ABAM's offices and confronted Campbell. Campbell falsely reassured them that she would access the bank account and see what was going on. About ten minutes later, Campbell told them everything was fine and provided them with what she represented was a printout of the account showing a balance of $55,674.99. In fact, Campbell transferred $55,674.99 from another HOA's bank account to falsely make it appear as though R.B.'s HOA's bank account had not been closed. In turn, Campbell then falsely told the HOA from which she had taken the $55,674.99 that the IRS had taken the money.

**Interstate wire:** In furtherance of her wire fraud scheme, on August 3, 2017, Campbell transferred $5,000 from Wells Fargo account #xxxxx5166, which was held by one of ABAM's HOA clients, to ABAM's Home Loan StateBank account #xxxxx5804, which was held in Colorado.  This wire was routed from Wells Fargo to Home Loan Statebank through the FedACH system, which routes all wires through a facility located in New Jersey.  This $5,000 transfer was unauthorized and was part of the proceeds of Campbell's wire fraud scheme.

Campbell knew that her fraud scheme was easier both to commit and conceal because the HOAs she targeted trusted her and did not supervise her in her role of managing their finances and bank accounts.  Through her scheme, Campbell stole money from approximately 23 HOAs.

## Subscribing to a False Tax Return

During at least the years 2014-2017, Campbell and her husband were residents of Colorado.  Because Campbell and her husband had prior outstanding tax obligations, Campbell put ABAM in the names of her children so that the IRS would not levy her income, but Campbell had exclusive control of ABAM and ABAN's income was income to Campbell.  To hide her income from the IRS, Campbell paid her personal expenses out of ABAM's bank account rather than taking a salary.

Campbell used Turbo Tax to personally prepare Partnership Returns (Forms 1065) for ABAM for the tax years 2014-2016, which she had her daughter sign.  On those Forms 1065 for tax years 2014-2016, Campbell failed to include in ABAM's gross receipts all of the money ABAM earned through legitimate fees or any of the money that Campbell had embezzled from the HOAs.

On May 1, 2018, Campbell met with an IRS Revenue Agent who was performing an audit pertaining to Campbell and her husband. The IRS Revenue Agent showed Campbell a summary of bank deposits for 2015-2016 that showed that ABAM's Forms 1065 for those years underreported gross receipts by at least $250,000.

On July 3, 2018, Grand Junction Police Detective Knowles interviewed Campbell about her embezzlement, and Campbell said: "I am also in trouble with the IRS, just so you know... this is how dumb I am... I didn't, I wasn't thinking that was income on my taxes. I would put all my 1099s but not all that money that was in my account." Detective Knowles and Campbell further discussed that Campbell was obligated to report and pay taxes on money that she stole from the HOAs.

On August 14, 2018, an IRS Revenue Officer asked Campbell to file Individual Income Tax Returns (Forms 1040) for the tax years 2012-2017, which had not previously been filed.

On September 19, 2018, Campbell and her husband filed with the IRS joint United States Individual Income Tax Returns (Forms 1040) for the tax years 2014-2017,[3] on which Campbell willfully did not include either her legitimate income from ABAM's HOA management business or the income from her embezzlement. Instead, each of these Forms 1040 included a Schedule C purportedly for income derived from ABAM, but the Schedule C described ABAM as her husband's construction business and only included income earned by Campbell's husband through his work as a construction contractor. Campbell signed and filed these returns knowing that they substantially underreported her taxable income and knowing that she had a legal

---

[3] Forms 1040 for tax years 2012-2013 were also filed but are not relevant here.

obligation to report and pay taxes on all of her taxable income.

**Count 2:** From Colorado, on September 19, 2018, Campbell and her husband filed with the IRS a joint United States Individual Income Tax Return (Form 1040) for the tax year 2016. Fully aware that the 2016 Form 1040 contained a written declaration that it was made under the penalties of perjury, Campbell signed this 2016 Form 1040 knowing that the total taxable income listed was false because she had not included the substantial income that she had received in 2016 from ABAM's legitimate HOA management fees or the money she embezzled from ABAM's HOA clients. This false statement regarding total taxable income was material because it impacted the calculation of the income tax that Campbell and her husband owed, resulting in a substantially lower income tax due and owing. At the time she signed this 2016 Form 1040, Campbell knew that she had a legal obligation to report on this income tax return all of her income for the year 2016, including the money she embezzled because she had discussed that obligation with Detective Knowles in July 2018. Campbell acted knowingly and willfully when she did not include all of ABAM's legitimate income or the income from her embezzlement and then signed this Form 1040 because she did not want to report and pay taxes on this income. As a result of her false statement on her 2016 Form 1040, Campbell owes an additional $33,649 in taxes for 2016.

As a result of her income from ABAM and from her embezzlement, Campbell should have reported a total taxable income of $89,848 in 2014, $123,196 in 2015, $112,738 in 2016, and $202,782 in 2017. Instead, Campbell only reported a total taxable income of $7,581 in 2014, $20,287 in 2015, $12,757 in 2016, and $13,121 in 2017.

As a result of her false statements on her 2014-2017 tax returns, Campbell owes a total of $158,820 in additional taxes for all of those tax years.  Campbell agrees that she owes restitution on this entire amount notwithstanding the fact that she has been allowed to plead guilty only as to the Form 1040 filed for 2016.

## VI.     ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.  The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.  To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a)     Under Section 2B1.1, the base offense level is 7.

b)     A 12-level enhancement applies because the loss was more than $250,000 but less than ~~$5,500,000~~, resulting in an offense level of 19.  §2B1.1(b)(1)(G).  *$550,000*  *(MB)*

c)     A 2-level enhancement applies because there were more than 10 victims, resulting in an offense level of 21.  §2B1.1(b)(2)(A)(i).

d)      A 2-level enhancement applies because the defendant abused a
        position of trust in a manner that significantly facilitated the
        commission of the offense, resulting in an offense level of 23.
        §3B1.3.

e)      Pursuant to Section 3D1.4, a 1-level enhancement should be
        added because the sentencing guideline calculation for the tax
        offense is 5 levels less that the calculation for the wire fraud
        offense.[4]

f)      The adjusted offense level is 24.

g)      The defendant should receive a 3-level downward adjustment for
        timely acceptance of responsibility.  The resulting total offense level
        is 21.

h)      The parties understand that the defendant's criminal history
        computation is tentative and based on the defendant's prior
        convictions.  The parties believe the defendant is in criminal history
        category I.

i)      The career offender/criminal livelihood/armed career criminal
        adjustments do not apply.

j)      The advisory guideline range resulting from these calculations is
        37-46 months.  However, in order to be as accurate as possible,
        with the criminal history category undetermined at this time, the
        offense level(s) estimated above could conceivably result in a
        range from 37 months (bottom of Category I) to 96 months (top of
        Category VI).  The guideline range would not exceed, in any case,
        the cumulative statutory maximums applicable to the counts of
        conviction.

k)      Pursuant to guideline § 5E1.2, assuming the estimated offense
        level above is correct, the fine range for this offense would be
        $15,000 to $150,000, plus applicable interest and penalties.

l)      Pursuant to guideline § 5D1.2, if the Court imposes a term of
        supervised release, that term shall be at least 1year, but not more
        than 3 year.

---

[4] For the tax offense in Count 2: pursuant to Section 2T1.1(a), the base offense level is
16.  Pursuant to Section 2T1.1(b)(1), a 2-level enhancement is added because the
defendant failed to report income exceeding $10,000 from a criminal activity.  The
adjusted offense level for the tax offense is 18.

Page 15 of 16

m)    Pursuant to guideline §5E1.1(a)(1), the Court shall enter a restitution order for the full amount of the victims' losses, which the parties agree will be an amount of $252,069 payable to the victim HOAs and $158,820 payable to the IRS.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.    ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 5/26/22

DEBRA CAMPBELL
Defendant

Date: 5/26/22

MARY BUTTERTON
Attorney for Defendant

Date: 5/27/22

PEGEEN D. RHYNE
Assistant U.S. Attorney

Page 16 of 16